## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARA J. NEWMAN, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 05-464J |
| | ) |
| MICHAEL J. ASTRUE, | ) JUDGE KIM R. GIBSON |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

### GIBSON, J.

This matter comes before the Court on the Parties' cross-motions for summary judgment and memoranda of law in support thereof. Document Nos. 11-15. The Court has jurisdiction of this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court will deny Plaintiff's Motion for Summary Judgment and grant the Commissioner of Social Security's cross-Motion.

### I. BACKGROUND

Plaintiff Sara J. Newman (hereinafter "Newman" or "Plaintiff") filed applications for disability insurance benefits (hereinafter "DIB") and supplemental security income benefits (hereinafter "SSIB") under Titles II and XVI of the Social Security Act (hereinafter "the Act") on August 4, 2003. Certified Transcript, p. 15, Document No. 7. Those applications were denied on November 12, 2003, and Plaintiff took no further action on them. *Id.* Newman protectively filed the instant applications for DIB and SSIB on March 10, 2004, alleging disability as of July 21, 2003. *Id.* at 114-116, 159, 944-946.

1

After the initial denial of her claims by the state agency, Plaintiff filed a timely request for a hearing. *Id.* at 92. A hearing was held in Altoona, Pennsylvania, on March 30, 2005, before Administrative Law Judge John J. Mulrooney, Jr. (hereinafter the "ALJ"). *Id.* at 35. Newman, who was represented by counsel, appeared and testified at the hearing. *Id.* at 37-66. Mark Heckman, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. *Id.* at 67-72.

On May 5, 2005, the ALJ issued a decision unfavorable to Newman. *Id.* at 12-24. The Appeals Council denied Plaintiff's request for review in November 2005, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. *Id.* at 6-8. Plaintiff filed the Complaint in the above-captioned matter on December 28, 2005. Document No. 3. Jo Anne Barnhart (hereinafter "Barnhart"), Commissioner of Social Security, filed an answer on March 9, 2006. Document No. 6. Newman and Barnhart filed cross-motions for summary judgment on June 9, 2006, and July 12, 2006, respectively. Document Nos. 11 & 14. Since the commencement of this action, Michael J. Astrue (hereinafter "the Commissioner") has replaced Barnhart as the Commissioner of Social Security. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Astrue has been substituted as the Defendant in this case.

## II. STANDARD

In reviewing the administrative determinations of the Commissioner of Social Security, the Court must determine whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations

2

omitted). *See also Stewart v. Sec'y*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review,

the United States Court of Appeals for the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for
> adjudication; rather, our decisions make clear that determination of the existence *vel non*
> of substantial evidence is not merely a quantitative exercise. A single piece of evidence
> will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a
> conflict created by countervailing evidence. Nor is evidence substantial if it is
> overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered
> by treating physicians)—or if it really constitutes not evidence but mere conclusion.
> The search for substantial evidence is thus a qualitative exercise without which our
> review of social security disability cases ceases to be merely deferential and becomes
> instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). *De novo* review of the facts is

prohibited and deference must be given to the Commissioner's findings unless there is an absence of

substantial evidence to support such findings in the record. 42 U.S.C. § 405(g); *Monsour Med. Ctr. v.*

*Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).

When resolving the issue of whether a claimant is disabled and therefore entitled to DIB or

SSIB, the Social Security Administration (hereinafter "the SSA") uses a five-step sequential evaluation

process. The United States Supreme Court recently summarized this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not
> review the claim further. At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful activity." 20 C.F.R. §§
> 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the
> claimant shows that he has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits the claimant's physical or mental
> ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the
> agency determines whether the impairment which enabled the claimant to survive step
> two is on the list of impairments presumed severe enough to render one disabled; if so,
> the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on
> the list, the inquiry proceeds to step four, at which the SSA assesses whether the
> claimant can do his previous work; unless he shows that he cannot, he is determined not

3

to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (footnotes omitted).

## III. ANALYSIS

In his decision, the ALJ noted that since Plaintiff had not submitted new and material evidence of her status on or before November 12, 2003, the initial denial of her earlier applications stood as the Commissioner's final decision as to Newman's disability status through that date. Certified Transcript, p. 15. Even though Plaintiff had worked subsequent to November 13, 2003, this work activity did not constitute substantial gainful activity within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). *Id.* at 22. At the second step of the sequential evaluation process, the ALJ determined that Plaintiff suffered from fibromyalgia, asthma with resection of a pulmonary nodule, diabetes mellitus, history of arthritis of the left shoulder and cervical spine, history of chronic pancreatitis, a bipolar disorder, a panic disorder, depression, and migraines. *Id.* Although these impairments were deemed to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii) and 416.920(c), the ALJ concluded that they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, subpt. P, app. 1 ("Listing of Impairments" or "listed impairment"). *Id.* In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ made the following finding with respect to Newman's residual functional capacity:

The claimant's residual functional capacity for the full range of light work is reduced by a limitation to occasional postural maneuvering such as balancing, stooping, kneeling, crouching, or climbing ramps and stairs and she is prohibited from crawling

4

and climbing ladders, ropes, or scaffolds. She is limited to occasional pushing and pulling with the left upper extremity to include the operation of hand levers. The claimant must avoid concentrated exposure to fumes, odors, dusts, gases, environments with poor ventilation, temperature extremes, or extreme wetness, humidity, or dampness. She is also limited to occupations that do not require exposure to dangerous machinery and unprotected heights. Ms. Newman is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple work-related decisions, and in general, relatively few work place changes. Lastly, she is limited to occasional interaction with supervisors, co-workers, and the general public.

*Id.* at 23.[1] Moving on to the fourth step, the ALJ determined that Plaintiff could not return to her past

relevant work as a residential caretaker or a cafeteria manager. *Id.* at 21.

At the time of the ALJ's decision, Newman was forty-nine years old, making her a younger individual within the meaning of 20 C.F.R. §§ 404.1563(c) and 416.963(c). *Id.* at 23. She had a high school education and was literate in English, but she had no acquired work skills that were transferable to the skilled or semi-skilled functions of other work. *Id.* She had two years of college and an associate's degree in culinary arts. *Id.* at 67. Based on the applicable residual functional capacity and vocational assessments, the ALJ concluded that Plaintiff could work as a routing clerk mail sorter, coupon redemption clerk, or floor worker. *Id.* at 23. Mr. Heckman's testimony established that these

---

[1] 20 C.F.R. § 404.1567(b) provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Identical language is contained in 20 C.F.R. § 416.967(b). This definition is consistent with the ALJ's determination that the Plaintiff had the residual functional capacity to "engage in a range of light work that involves occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10 pounds, and standing and walking for two-thirds of an eight-hour workday." Certified Transcript, p. 20.

5

jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). *Id.* at 68-72.

In support of her Motion for Summary Judgment, Plaintiff purports to make six specific arguments. The first and sixth arguments, however, are virtually identical. Document No. 12, pp. 2-3. For this reason, they will be discussed together.

### A. Substantial Evidence Supports the ALJ's Conclusion at Step Three

Plaintiff claims that the ALJ erred in determining that she did not suffer from an impairment which met or medically equaled an impairment appearing in the Listing of Impairments. *Id.* at 5-6, 13-14. In *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990), the United States Supreme Court explained that "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of [her] unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531. Instead, "[f]or a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.*

At the hearing, Newman's counsel indicated that he was "not certain" that Plaintiff's impairments met or medically equaled a listed impairment. Certified Transcript, p. 72. Nevertheless, the ALJ carefully evaluated Plaintiff's impairments under no less than *seven* specific listings. *Id.* at 17-18. These listings included Listing 1.02 (major dysfunction of a joint), Listing 3.02A (chronic obstructive pulmonary disease), Listing 3.03 (asthma), Listing 4.00 (cardiovascular system), Listing 9.08 (diabetes mellitus), Listing 12.04 (affective disorders), and Listing 12.06 (anxiety related

6

disorders). *Id.* Adequate reasons were given by the ALJ to support his determination that Newman's impairments did not meet or medically equal any of the relevant listings. *Id.* This thorough analysis is more than sufficient to provide the Court with a basis for meaningful judicial review of the ALJ's equivalency analysis. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). Thus, the Court cannot say that the ALJ failed to adequately articulate his reasoning.

In order for Plaintiff to obtain a remand on the basis of the ALJ's determination at the third step of the sequential evaluation process, she must demonstrate that the ALJ's conclusion is not supported by substantial evidence. 42 U.S.C. § 405(g). Despite making her equivalency argument *twice*, she never mentions a specific listed impairment which she believes her impairments to have equaled at the time of the ALJ's decision. Document No. 12, pp. 5-6, 13-14. No guidance whatsoever is provided as to what listings she deems relevant to her case.[2] Given the ALJ's thorough analysis at the third step of the sequential evaluation process; the implicit concession by Plaintiff's attorney at the hearing that he was "not sure" that the Newman's impairments equaled a listing; and Plaintiff's failure to identify a relevant listing in her motion for summary judgment, the Court must conclude that Newman's first and sixth arguments are without merit.

**B. The ALJ Gave Appropriate Consideration to the Opinions of Plaintiff's Physicians**

[2] Since Plaintiff does not identify any particular listing, it is not necessary for the Court to specifically evaluate her impairments in more detail. In any event, it is worth noting that a state agency physician did not believe that Newman's nonexertional impairments equaled a listed impairment. Certified Transcript, p. 377. Evaluating her impairments under Listing 12.04 (affective disorders), the physician opined that Plaintiff experienced mild restrictions in her activities of daily living, mild difficulties in maintaining her social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. *Id.*

7

In her second argument, Plaintiff claims that the ALJ failed to give "appropriate weight and consideration" to the opinions of her treating physicians and mental health providers. Document No. 12, p. 6. This argument must also fail. While Newman references treatment notes describing her impairments, she utterly fails to explain what medical opinions were not considered by the ALJ. *Id.* at 7-8. She claims that her impairments, when considered in combination, "are totally disabling." *Id.* at 7. However, that was not the opinion expressed by her treating medical professionals. On June 10, 2004, a Veterans Affairs nurse refused to declare Plaintiff to be disabled. Certified Transcript, p. 686. Admittedly, this refusal may have had as much to do with the nurse's desire to wait for the opinion of a physician. Nevertheless, on July 16, 2004, Dr. Joseph S. Silverman, a psychiatrist, made the following observations after examining Newman:

Very pleasant. Somewhat shy. Focussed [sic] on obtaining disability benefits, planning to do things that she enjoys, productive things, after she obtains such benefits (note that girlfriend is on SSIB for diabetes and menstrual problems). Sara does not think through things to the point of experiencing social consciousness about the need for people to be as productive as possible for the betterment of society.

*Id.* at 916. On three specific occasions, medical personnel opined that Plaintiff was *not* disabled. *Id.* at 479, 505, 590. Moreover, on February 9, 2005, Dr. Silverman reported that Newman had stated, "I am tired of working." *Id.* at 912. One month later, Dr. Silverman described Plaintiff as "sweet but immature." *Id.* at 911. He believed that her "real goal" was to obtain disability benefits. *Id.*

In his opinion, the ALJ made specific reference to Newman's apparent focus on obtaining benefits. *Id.* at 19. The Court does not mean to independently question Plaintiff's motivation to work, or to otherwise impugn the sincerity of her claims. Since the ALJ's decision is supported by substantial evidence, however, this Court cannot set that decision aside even if it would have decided the factual

inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It was the ALJ who was charged with the duty of weighing the evidence, and the record provides ample support for his determination in this case. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985).

Plaintiff bases her second argument, in part, on the alleged failure of the ALJ to consider the combined effects of all of her impairments. She contends that he failed to consider her "sensory neuropathy." Document No. 12, p. 7. Apparently, he did not believe that she suffered from that precise impairment. Certified Transcript, p. 17 ("However, these conditions have not resulted in neuropathy demonstrated by persistent disorganization of motor function in two extremities, acidosis, or retinitis proliferans."). Newman insists that the ALJ ignored her carpel tunnel syndrome. Document No. 12, p. 7. The ALJ was not convinced that this impairment still affected Plaintiff at the time of his decision. Certified Transcript, p. 16. He explained:

> The claimant also has a history of right carpel tunnel release and left wrist surgery. In April 2004, she complained of an injury to her right hand resulting in pain and numbness. However, this problem appears to be acute and there is no history of diagnosis or treatment for 12 months during the period in question.

*Id.* To the extent Plaintiff argues that her obesity should have been considered as an impairment, she fails to articulate what effect this "impairment" had on her ability to perform work-related tasks. Document No. 12, p. 7. "Residual functional capacity is defined as that which an individual is still able to do despite the *limitations* caused by his or her *impairments*." *Pearson v. Barnhart*, 380 F. Supp. 2d 496, 505 (D.N.J. 2005) (emphasis added). Impairments that do not result in work-related limitations are irrelevant to the residual functional capacity inquiry.

Newman devotes a portion of her brief to explaining how the record demonstrates the existence

9

Case 3:05-cv-00464-KRG   Document 16   Filed 06/11/07   Page 10 of 14

of her impairments. Document No. 12, p. 7. There is no question that Plaintiff suffers from "severe" impairments. The dispositive question is whether these impairments are *disabling* within the meaning of the Act. There is "a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). Since the Plaintiff suffers from both exertional and nonexertional impairments, the ALJ had a duty to consider the combined effect of these impairments on the Plaintiff's ability to perform job-related tasks. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). Given the ALJ's all-encompassing residual functional capacity determination, the Court is satisfied that this duty was fulfilled.

## C. Whether Plaintiff's Work Constitutes Substantial Gainful Activity

The Social Security regulations establish the standards used to determine whether a claimant's work activities constitute "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976. Although Plaintiff testified that she worked between twelve and twenty-four hours per week, the ALJ did not believe that this work activity constituted substantial gainful activity.[3] Certified Transcript, p. 22. In her third argument, Newman contends that the ALJ erred in determining that her part-time work indicated that she had the capacity to engage in substantial gainful activity. Document No. 12, pp. 8-9. According to Plaintiff, her work activity constituted only "transitory activity." *Id.* at 9.

---

[3] At the hearing, Plaintiff originally testified that she worked between twenty-four and forty-eight hours per week. Certified Transcript, p. 42. When questioned by her attorney, however, she clarified that she was referring to the number of hours per paycheck, which she received every two weeks, rather than the number of hours per week. *Id.* at 54. Therefore, her testimony established that she worked between twelve and twenty-four hours per week.

10

The Court acknowledges that there is a difference between "substantial gainful activity" and part-time work of the kind Plaintiff performed. The ALJ, however, did not equate the two. He did not treat Newman's part-time work as *dispositive* of the ultimate disability issue. Instead, he relied on Plaintiff's ability to fulfil the duties of a part-time job as *evidence* of her ability to perform the duties of a full-time job. Certified Transcript, p. 22 ("The claimant has not engaged in substantial gainful activity since November 13, 2003, but her continuing work does indicate the capacity to engage in a good deal of work activity."). The definition of "substantial gainful activity" incorporates the definition of "substantial work activity," which "may be substantial even if it is done on a part-time basis." 20 C.F.R. §§ 404.1572 and 416.972. The standards at the first and fifth steps of the sequential evaluation process are not the same. While a finding that a claimant is engaging in part-time work (which satisfies the "substantial gainful activity" criteria) directs a finding of non-disability at the first step, the Commissioner's burden at the fifth step has generally been construed to require a showing that the claimant can perform work on a full-time basis. *Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000); *Kelley v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999); *Grove v. Barnhart*, 382 F. Supp. 2d 1104, 1111 (S.D. Iowa 2005). Although the ability of a claimant to work on a part-time basis is not *alone* sufficient to establish that he or she can work on a full-time basis, a claimant's ability to perform the duties of a part-time job is certainly *relevant* to the inquiry as to whether he or she is capable of performing the duties of a full-time job. The ALJ's treatment of this evidence was entirely permissible, and this Court is convinced that his ultimate conclusion is supported by substantial evidence.

## D. Plaintiff's Residual Functional Capacity

In her fourth argument, Plaintiff contends that the ALJ erred in determining that she was capable

11

of performing work at the light exertional level. Document No. 12, p. 9. No specific reason is given as to why this determination was erroneous. *Id.* ("Particularly in light of the claimants [sic] impairments listed and discussed herein, it is clear from te [sic] record that the claimant could not perform work at the light exertional level."). Newman goes on to assert that since the ALJ erred in determining her residual functional capacity, the hypothetical question posed to Mr. Heckman was defective. *Id.* The Court does not agree that the ALJ erred in determining that Plaintiff was capable of performing work at a light exertional level). For this reason, the Court is not convinced that the ALJ's hypothetical question to Mr. Heckman was defective.[4] While the ALJ was required to include in his hypothetical question all limitations that it found *credibly established*, he was not required to include every limitation *alleged* by the Plaintiff. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Therefore, Plaintiff's fourth argument is without merit.

## E. The ALJ Did Not Erroneously Discount Allegations of Plaintiff's Pain

In her fifth and final argument, Plaintiff argues that the ALJ erred in discounting her allegations

---

[4] The Court notes that a particular finding of the ALJ may or may not correspond directly with the ALJ's hypothetical question to Mr. Heckman, depending on whether the phrase "a good deal of walking or standing"means the same thing as "for two-thirds of an eight-hour workday." When asking his hypothetical question, the ALJ instructed Mr. Heckman to assume that the hypothetical individual was "limited to a light range of work as that term is defined in the regulations." Certified Transcript, p. 69. The regulations make it clear that "light work" requires "a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b) and 416.967(b). Relying on Plaintiff's "capacity to work two to three days per week and to stand all day while working[,]" the ALJ determined that Newman could stand or walk for "two-thirds of an eight-hour workday" if she worked on a full-time basis. Certified Transcript, p. 20. Plaintiff does not argue that there is a discrepancy between the findings of the ALJ and the hypothetical question posed to Mr. Heckman. Instead, she argues that the ALJ erred in determining that she had the residual functional capacity to perform the physical exertional requirements of light work. Document No. 12, p. 9. Since Newman does not argue that the ALJ's hypothetical question, which defined her residual functional capacity in terms of "a light range of work as that term is defined under the regulations," failed to accurately convey that she could stand or walk for only "two-thirds of an eight-hour workday," the issue has been waived. The Court expresses no opinion as to whether such an argument, if raised, would have been meritorious. The Court concludes that the ALJ's hypothetical question to Mr. Heckman was not defective for the reason alleged in the Plaintiff's brief. Whether it was defective for other reasons is a question that is not before the Court.

regarding the degree of her debilitating pain and resulting limitations. Document No. 12, pp. 9-13. She asserts that "there is clearly objective medical evidence of one or more conditions that could reasonably be expected to produce pain." *Id.* at 13. In *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993), the United States Court of Appeals for the Third Circuit explained that "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." There must, of course, be objective evidence of a *medical condition* that could be expected to produce pain, but there need not be evidence of the pain itself. *Id.* In this case, the ALJ did not discount Plaintiff's allegations of *pain*. Instead, he discounted the Plaintiff's allegations as to the *degree of limitation* resulting from that pain. Certified Transcript, p. 20 ("Therefore, focusing on her ability to function, rather than her multiple diagnoses, her capacity to work is greater than alleged."). Since Newman's impairments do not meet or medically equal a listed impairment, she cannot obtain a *per se* disability determination merely by showing that she suffers from *potentially disabling* medical conditions. In order to qualify for benefits, Plaintiff must show that the pain is disabling *in her case*. Given her ability to work, albeit on a part-time basis, the ALJ had sufficient ground to conclude that her pain was not disabling. This is particularly true in light of the fact that Plaintiff's own health care providers did not believe she was disabled, as well as her inability to identify a single medical source to substantiate her complaints of *disabling* pain.

The ALJ did not determine Newman's residual functional capacity arbitrarily. He specifically relied on the report of a state agency medical consultant. Certified Transcript, p. 20. Although such reports are not accorded the same amount of weight as reports from treating and examining physicians, Plaintiff cannot point to any reports in the record to substantiate her allegations of disabling

13

impairments.

**IV. CONCLUSION**

In conclusion, the Court does not doubt that Newman suffers from various ailments that inhibit her ability to perform job-related tasks. The ALJ, however, determined that these ailments neither equaled a listed impairment nor resulted in disabling functional limitations. Having reviewed the record, the Court is convinced that this determination is "supported by substantial evidence" for purposes of 42 U.S.C. § 405(g). The inquiry can therefore proceed no further. Accordingly, the Court will deny Plaintiff's Motion for Summary Judgment (Document No. 11) and grant the Motion for Summary Judgment filed by the Commissioner (Document No. 14).

An appropriate Order follows.

**AND NOW**, this 11th day of June, 2007, this matter coming before the Court on the Parties' cross-motions for summary judgment, **IT IS HEREBY ORDERED** that 1) Plaintiff's Motion for Summary Judgment (Document No. 11) is **DENIED**, and 2) Defendant's Motion for Summary Judgment (Document No. 14) is **GRANTED**. Accordingly, the Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff Sara J. Newman and shall mark this case closed.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc:    All counsel of record**

14